UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 21-cv-14482-Cannon/McCabe

CATHERINE BERNTHEIZEL,

    Plaintiff,

v.

SAFECO INSURANCE COMPANY
OF ILLINOIS,

    Defendant.
_____/

**REPORT AND RECOMMENDATION**

THIS CAUSE comes before the Court upon Defendant's Motion for Summary Judgment (DE 89) ("Motion"), which was referred to the undersigned by United States District Judge Aileen M. Cannon (DE 116). The Court held a hearing on the Motion on February 5, 2024 (DE 128). For the reasons set forth below, the undersigned recommends that the Motion be **GRANTED**.

**I.    OVERVIEW**

This is an insurance dispute between an underinsured motorist ("UM") carrier, Safeco Insurance Company ("Safeco"), and its insured, Plaintiff, arising from injuries suffered in an automobile accident caused by a third-party tortfeasor. The tortfeasor made a pre-suit offer to settle Plaintiff's claim for $100,000. Plaintiff notified Safeco of this offer pursuant to the statutory subrogation framework set forth in Fla. Stat. § 627.727(6). Rather than approve the settlement, Safeco opted to preserve its subrogation rights by advancing $100,000 to Plaintiff in accordance with the statute. Plaintiff thereafter settled her claim anyway, accepting $100,000 from the tortfeasor. This lawsuit poses the question of whether Plaintiff must return the money that Safeco

advanced pursuant to Fla. Stat. § 627.727(6).  As set forth below, the Court finds that Plaintiff must return the money.

## II.     UNDISPUTED FACTS

The record shows the following undisputed facts.

### The Automobile Accident

1. On January 7, 2019, Plaintiff suffered injuries in an automobile accident caused by an at-fault tortfeasor (DE 102 ¶ 6).

2. At the time of the accident, the tortfeasor had an insurance policy issued by the Auto Club Insurance Company of Florida ("AAA"), with bodily injury policy limits of $100,000 per person (DE 102 ¶¶ 7, 8).  Plaintiff had a UM policy issued by Safeco, with policy limits of $100,000 per person (DE 102 ¶ 1, Policy available at DE 90-1).

3. Attorney William Ponsoldt represented Plaintiff at all relevant times in this dispute (DE 107 ¶¶ 2, 3; DE 102 ¶ 13).

### The Pre-Suit Offer from AAA

4. On or about July 30, 2019, the tortfeasor's insurance company, AAA, offered to settle pre-suit with Plaintiff for the policy limits of $100,000 (DE 72 ¶¶ 3, 9; DE 73 ¶¶ 3, 9; DE 102 ¶ 10).

5. On August 8, 2019, Attorney Ponsoldt notified Safeco of the AAA offer pursuant to Fla. Stat. § 627.727(6), which triggered certain subrogation rights and responsibilities:

> 627.727.   Motor vehicle insurance; uninsured and underinsured vehicle coverage; insolvent insurer protection
>
> …
>
> (6)(a)   If an injured person or, in the case of death, the personal representative agrees to settle a claim with a liability insurer and its insured, and such settlement would not fully satisfy the claim for personal injuries or wrongful death so as to

create an underinsured motorist claim, then written notice of the proposed settlement must be submitted by certified or registered mail to all underinsured motorist insurers that provide coverage. The underinsured motorist insurer then has a period of 30 days after receipt thereof to consider authorization of the settlement or retention of subrogation rights. If an underinsured motorist insurer authorizes settlement or fails to respond as required by paragraph (b) to the settlement request within the 30-day period, the injured party may proceed to execute a full release in favor of the underinsured motorist's liability insurer and its insured and finalize the proposed settlement without prejudice to any underinsured motorist claim.

(b)   If an underinsured motorist insurer chooses to preserve its subrogation rights by refusing permission to settle, the underinsured motorist insurer must, within 30 days after receipt of the notice of the proposed settlement, pay to the injured party the amount of the written offer from the underinsured motorist's liability insurer. Thereafter, upon final resolution of the underinsured motorist claim, the underinsured motorist insurer is entitled to seek subrogation against the underinsured motorist and the liability insurer for the amounts paid to the injured party.

Fla. Stat. § 627.727(6) (DE 102 ¶ 11).

6.   Attorney Ponsoldt's notice provided as follows:

Re: Catherine M. Berntheizel
Date of Loss: January 7, 2019
Claim No.: LA000-038975851-02

As you know, we represent [Plaintiff] with respect to the above-referenced matter. I previously emailed you and requested that you [] tender your uninsured motorist limits due to [Plaintiff's] injuries and waive all subrogation rights.

I am now writing you this formal letter to obtain a waiver of subrogation rights or payment from you of the underlying policy limits of $100,000.  See Section 627.727(6)(a), Fla. Stat.  In that regard, [Plaintiff] proposes to settle her claim with [the tortfeasor] in accordance with the attached letter from [the tortfeasor's insurance], AAA insurance.

For your convenience, I have included another copy of [Plaintiff's] medical records. I look forward to hearing from you soon.

Very truly yours,

William R. Ponsoldt, Jr.

(DE 102 ¶ 11, DE 90-5).

7. Upon receiving the notice, Safeco declined to waive its subrogation rights, electing instead to pay $100,000 to Plaintiff (DE 72 ¶ 11, DE 73 ¶ 11, DE 102 ¶ 12). On August 12, 2019, Safeco notified Plaintiff as follows:

> Dear Mr. Ponsoldt,
>
> This letter is in response to your e-mail dated July 30, 2019 where you notified us AAA Insurance tendered their $100,000 in policy limits. You requested to be advised within 30 days on our intention to waive subrogation or advance the $100,000 that has been offered. This letter will confirm our conversation on August 12, 2019 where I advised you that we will be advancing the $100,000. I look forward to working with you on the resolution of the underinsured motorist claim. Please let me know if you have any questions.
>
> Sincerely,
> David Sherman
> Safeco Claims

(DE 102 ¶ 12, DE 90-6).

8. Thereafter, Attorney Ponsoldt received a check from or on behalf of Safeco, dated August 12, 2019, made out for the benefit of Plaintiff in the amount of $100,000 (DE 114-1 at 3).

9. Having received the $100,000 check, and believing the tortfeasor to be a collectible target for purposes of litigation, Plaintiff then filed suit in Florida state court against the tortfeasor on or about January 10, 2020, case number 432020000020CAAXMX (DE 102 ¶ 13, DE 1-3 at 8, DE 90-11 at 4).

## Settlement of the UM Claim

10. Approximately eleven months later, on or about December 8, 2020, Plaintiff and Safeco settled the UM claim for $90,000 via a Final Settlement Agreement and General Release ("UM Settlement Agreement") (DE 102 ¶ 14, DE 104-1). The UM Settlement Agreement expressly allowed Plaintiff to continue her ongoing lawsuit against the tortfeasor (DE 104-1).

11. Pursuant to the UM Settlement Agreement, Attorney Ponsoldt received a check, dated December 2, 2020, made out for the benefit of Plaintiff in the amount of $90,000 (DE 114-1 at 1). By December 2020, therefore, Plaintiff had received two checks, totaling $190,000, from or on behalf of Safeco in connection with her claims -- one check for $100,000 and the other for $90,000.

### Settlement with the Tortfeasor

12. On May 5, 2022, shortly before the state court case against the tortfeasor was scheduled to go to trial, Plaintiff settled the case for $100,000, paid to Plaintiff by AAA on behalf of the tortfeasor (DE 90-11, DE 90-12, DE 107 ¶ 36). The state court thereafter dismissed the case with prejudice (DE 90-14 at 3).

13. By May 2022, therefore, Plaintiff had received three checks, totaling $290,000, in connection with her claims -- two checks by or on behalf of Safeco totaling $190,000 and one check from AAA for $100,000.

14. Upon learning that the state court case had been settled and dismissed with prejudice, Safeco demanded that Plaintiff return the $100,000 it had previously advanced to preserve its subrogation rights (DE 90-13, DE 90 ¶ 19, DE 108 ¶ 19). Safeco made this demand pursuant to Part F of its UM policy, further discussed below.

15. Plaintiff refused to return the money (DE 90 ¶ 20, DE 108 ¶ 20).

### This Suit

16. On November 4, 2021, Plaintiff filed suit for declaratory relief in state court against Safeco, seeking a declaration of the parties' rights with respect to the $100,000 paid pursuant to Fla. Stat. § 627.727(6)(b) (DE 1-3 at 9). Safeco later removed the case to federal court (DE 1).

17. The operative complaint seeks a court declaration that Safeco has no right to recover the $100,000 it paid to Plaintiff to preserve its subrogation rights (DE 72 ¶ 40). In response, Safeco filed counterclaims for breach of contract, unjust enrichment, and a declaration that Plaintiff must return the $100,000 (DE 73 at 9-11).

### III. LEGAL STANDARD:

By way of this Motion, Safeco seeks summary judgment on all claims (DE 89 at 1). A district court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To satisfy this burden, the movant must show the court that "there is an absence of evidence to support the non-moving party's case." *Id.* at 325.

After the movant has met its burden under Rule 56(a), the burden of production shifts, and the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). As Rule 56 explains, "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact ... the court may ... grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(3). Therefore, the non-moving party "may not rest upon the mere allegations or denials in its pleadings" but instead must present "specific facts showing that there is a genuine issue for trial." *Walker v. Darby*, 911 F.2d 1573, 1576-77 (11th Cir. 1990). "A genuine issue of material fact exists when the evidence is such that a reasonable

jury could return a verdict for the non-moving party." *Quigg v. Thomas Cnty. Sch. Dist.*, 814 F.3d 1227, 1235 (11th Cir. 2016) (cleaned up).

In deciding a motion for summary judgment, the Court must view the facts in the light most favorable to the non-moving party. *Davis v. Williams*, 451 F.3d 759, 763 (11th Cir. 2006). The Court must resolve ambiguities and draw justifiable inferences in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Ultimately, "the trial court may … deny summary judgment in a case where there is reason to believe that the better course would be to proceed to a full trial." *Id.*

## IV. DISCUSSION

Safeco argues that summary judgment should be entered because the plain language of its UM policy requires Plaintiff to return the money that Safeco advanced to preserve its subrogation rights. As set forth below, the Court agrees.

### A. UM Policy Language

This dispute arises within the context of Florida's statutory framework for UM subrogation claims. By enacting Fla. Stat. § 627.727(6), the Florida legislature imposed a framework that requires UM insureds to notify UM insurers of proposed settlements that might impact their subrogation rights, and the statute imposes certain obligations on the part of UM insurers to either waive or preserve those rights. *See State Farm Mut. Auto. Ins. Co. v. Hassen*, 650 So. 2d 128, 132-33 (Fla. 2d DCA 1995) (discussing background and purpose of § 627.727(6)). Plaintiff invoked this framework by sending notice to Safeco of the tortfeasor's proposed pre-suit offer to settle the claim for $100,000 (DE 102 ¶ 11, DE 90-5). At that point, Safeco had two options: (1) approve the settlement and thereby waive its subrogation rights, or (2) refuse to approve the

settlement and thereby preserve its subrogation rights *and* pay Plaintiff an amount equal to the proposed settlement, i.e., $100,000. *See* Fla. Stat. § 627.727(6). Safeco chose option (2).

As one Florida court has noted, the Florida legislature imposed the payment burden in order to protect injured persons who might need the funds available from an immediate settlement with the tortfeasor:

> It is obvious from this analysis that the legislative purpose for the 1992 revision of section 627.727(6) was to address the situation in which an injured party was denied immediate access to needed compensation from a tortfeasor's liability carrier because the injured party's uninsured motorist carrier refused to approve a settlement offer and waive its subrogation rights. Thus, the legislature, through this revision, shifted the financial burden from the injured party to the uninsured motorist carrier by mandating that the carrier immediately pay over to its insured the full amount of the tortfeasor's liability carrier's settlement offer, irrespective of any determination of liability, as a condition of preserving subrogation rights.

*State Farm*, 650 So. 2d at 132.

The Florida statute does not address the situation that has arisen here, i.e., where the UM insurer refuses to approve the proposed settlement and instead advances money equal to the tortfeasor's offer, but the injured party thereafter proceeds with the tortfeasor's settlement anyway, resulting in a dismissal of the claim with prejudice. While the statute does not address this scenario, Part F of Safeco's UM policy provides the following guidance, using terms that mirror the language of § 627.727(6):

> **OUR RIGHT TO RECOVER PAYMENT**
>
> A.  If we make a payment under this policy and the person to or for whom payment was made has a right to recover damages from another person, entity or organization [Safeco] shall be subrogated to that right. That person shall:
>     1. Do whatever is necessary to enable [Safeco] to exercise [Safeco's] rights; and
>     2. Do nothing after loss to prejudice them.
>
> However, our rights in this paragraph (A.) do not apply under Part D – Coverage for Damage to Your Auto, against any person using **your covered auto** with your express or implied permission or other person having lawful possession.

> We shall not use that right if the person against whom it may be asserted is an **Insured** under Part A – Liability Coverage of this policy.
>
> Our rights do not apply under paragraph A. above with respect to coverage under section 2. of the definition of **uninsured motor vehicle** if we:
>
> 1. Have been given prompt written notice of a tentative settlement between an **Insured** and the insurer of an **uninsured motor vehicle**; and
> 2. Fail to advance payment to the **Insured** in an amount equal to the tentative settlement within 30 days after receipt of notification.
>
> If [Safeco] advance[s] payment to the **Insured** in an amount equal to the tentative settlement within 30 days after receipt of notification:
> 1. That payment will be separate from any amount the **Insured** is entitled to recover under the provisions of the Uninsured Motorists Coverage; and
> 2. *We also have a right to recover advance payment.*
>
> B. If [Safeco] make[s] a payment under this policy and the person to or for whom payment is made recovers damages from another, that person shall:
> 1. Hold in trust for [Safeco] the proceeds of the recovery; and
> 2. *Reimburse [Safeco] to the extent of [Safeco's] payment.*

(DE 90-1 at 53, DE 102 ¶ 4) (bold in original, italics added).

The Court finds the plain and unambiguous language above requires Plaintiff to return the $100,000 that Safeco previously advanced. Under Florida law, "where the language of a policy is plain and unambiguous, the contract must be enforced as written." *Fabricant v. Kemper Indep. Ins. Co.*, 474 F. Supp. 2d 1328, 1330 (S.D. Fla. 2007). In this case, Safeco "advance[d] payment to the **Insured** in an amount equal to the tentative settlement within 30 days after receipt of notification," as contemplated by the above language (DE 90-1 at 53). Plaintiff thereafter "recover[ed] damages from another," by accepting the tortfeasor's $100,000 settlement offer shortly before trial. Under the plain and unambiguous language of the UM policy, Plaintiff must now "reimburse [Safeco] to the extent of [Safeco's] payment" (DE 90-1 at 53).

The Court finds support for this conclusion in the general rule that, absent bad faith, an insurer's liability is limited to the amount of its policy limits. *See State Farm Mut. Auto. Ins. Co. v. St. Godard*, 936 So.2d 5, 9 (Fla. 4th DCA 2006) ("[I]n the absence of a judicial finding of bad faith, in an action against an insurer for damages under a policy of insurance, a final judgment against the insurer cannot exceed the stated policy limits."). Here, Safeco issued a UM policy to Plaintiff with coverage limits of only $100,000 (DE 90-1 at 13, DE 102 ¶ 1). Yet Plaintiff claims an entitlement to recover a total of $190,000 under the policy -- $90,000 paid to resolve the UM claim and $100,000 advanced pursuant to Fla. Stat. § 627.727(6). The Court finds this interpretation of the policy to be contrary to Florida law.

### B.      Plaintiff's Arguments

Plaintiff raises a number of additional arguments in opposition to summary judgment, each of which the Court will address in turn.

#### 1.      Issuer of the $100,000 Check

Plaintiff first argues that a genuine issue of material fact remains as to the issuer of the $100,000 check sent to her pursuant to Fla. Stat. § 627.727(6). Specifically, the record shows the $100,000 check received by Attorney Ponsoldt identified the account holder as Safeco's parent company "Liberty Mutual Insurance Company," rather than Safeco itself (DE 114-1 at 3). Plaintiff argues this creates a factual issue as to whether Safeco advanced any money at all under the statute and, hence, whether Safeco has standing to request the return of any such money (DE 109 at 3, 9).

The Court disagrees for two reasons. First, Plaintiff's operative complaint expressly alleges that Safeco paid $100,000 to preserve its right of subrogation (DE 72 ¶¶ 11, 13, 25.) Safeco admitted this allegation (DE 73 ¶ 11). As a general rule, parties cannot avoid summary judgment by contradicting the allegations of their own pleadings. *See Reagan v. Targia*, No. 6:09-CV-2012-

ORL-31GJK, 2011 WL 13298576, at *3 n.8 (M.D. Fla. Apr. 6, 2011) ("Reagan cannot contradict the allegations of his own Complaint in order to create a genuine issue of fact and thereby avoid summary judgment."); *Doe v. Willis*, No. 8:21-CV-1576-VMC-CPT, 2023 WL 2799747, at *10 (M.D. Fla. Apr. 5, 2023) (same).

Second, close examination of the $100,000 check shows it came from -- or at least on behalf of -- Safeco. Although the check identified "Liberty Mutual Insurance Company" as the account holder, it also identified an account number ending in 2065 and a bank ID number ending in 0571 (DE 114-1 at 3). These numbers match the account and bank ID numbers on the $90,000 check that Attorney Ponsoldt received to settle Plaintiff's UM claim with Safeco (DE 114-1 at 1). In short, both checks came from the same account. Moreover, the face of the latter check identified the account holder as "Safeco Insurance, a Liberty Mutual Company" (DE 114-1 at 1).

A genuine issue of material fact exists only where a reasonable jury could find in favor of the non-moving party. *Quigg*, 814 F.3d at 1235. Here, the Court finds that no reasonable jury could reach any conclusion except that the $100,000 check was sent to Plaintiff pursuant to Fla. Stat. § 627.727(6) by or on behalf of Safeco.

### 2. "Made-Whole" Doctrine

Plaintiff next argues that summary judgment cannot be granted because the "made-whole" doctrine allows her to keep the $100,000 that Safeco advanced under the statute (DE 109 at 4). Specifically, Plaintiff has attached affidavits indicating that her total damages from the automobile accident exceeded $500,000 (DE 104, DE 123). Plaintiff argues that she need not return the money to Safeco because she has not yet been made whole for these damages.

The Court disagrees and finds that the made-whole doctrine does not apply under these facts. The made-whole doctrine functions as a common law limitation upon an insurance carrier's

11

right of subrogation where the carrier and the injured party simultaneously seek recovery from the same limited fund. *See, e.g., Monte de Oca v. State Farm Fire & Cas. Co.*, 897 So.2d 471, 473 (Fla. 3d DCA 2004) (explaining the doctrine). "Decisions applying the made whole doctrine essentially hold that where both the insurer and the insured simultaneously attempt to recover all of their damages from a tortfeasor who cannot (because of insolvency, limited insurance coverage, or other reasons) pay the full value of damages, the insured has priority of recovery over the insurer." *Schonau v. Geico Gen. Ins. Co.*, 903 So.2d 285, 287 (Fla. 4th DCA 2005); *see also* 16 Jordan R. Pitt et al., *Couch on Insurance* § 223:145 (3d ed. 2010) ("[A]n insurance contract providing generally that the insurer is subrogated to the rights of the insured does not itself permit an insurer to recover from a third-party tortfeasor until the insured has been made whole by the combination of insurance payments and the amount recovered from the tortfeasor, and there must be specific language to the contrary to avoid the make whole rule.").

The case of *Florida Farm Bureau Ins. Co. v. Martin*, 377 So.2d 827, 828–30 (Fla. 1st DCA 1979) illustrates the rule. In *Farm Bureau*, an insurer paid its insured homeowners $42,535 for fire damage to their property. *Id.* at 828. The homeowners thereafter sued the at-fault tortfeasor and recovered the maximum policy limits of $50,000 from the tortfeasor's insurer, as well as $2,500 from the tortfeasor individually, which the parties stipulated to be the maximum recoverable. *Id.* The parties also stipulated that the homeowners had suffered total property damages of $110,000, meaning that their total combined recoveries fell below their actual damages. *Id.*

Under these facts, the insurer moved to intervene in the homeowners' lawsuit and assert a subrogation claim against the amounts recovered by the homeowners. *Id.* The insurer sought to recoup its $42,535 payment out of the homeowners' recovery from the tortfeasor. *Id.* The trial

12

court entered summary judgment against the insurer, and the appellate court affirmed, finding that the insurer could not seek subrogation in this scenario because the homeowners had not yet been made whole. *Id.* at 830-31 ("In the absence of express terms to the contrary, the insured is entitled to be made whole before the insurer may recover any portion of the recovery from the tortfeasor.").

The Court finds the facts here to be distinguishable from *Farm Bureau* and other cases that apply the made-whole doctrine. By requesting the return of its statutory $100,000 payment, Safeco did not attempt to exercise any subrogation rights against amounts recovered from the tortfeasor. Instead, Safeco merely sought to exercise its contractual right to a return of moneys previously advanced to Plaintiff under Fla. Stat. § 627.727(6). Safeco argues, and the Court agrees, that to apply the made-whole doctrine under these facts would upend the statutory framework established in Fla. Stat. § 627.727(6) and result in UM insurers regularly paying amounts in excess of their policy limits. *See State Farm*, 936 So.2d at 9 (noting that, in the absence of bad faith, an insurer cannot be liable for more than its policy limits).

By way of contrast, had Safeco, in addition to seeking the return of its statutory $100,000 payment, also asserted a true subrogation claim to seek recoupment, out of proceeds recovered from the tortfeasor, of the $90,000 paid to resolve the UM claim, then the made-whole doctrine might be in play. But Safeco did not assert any such claim, and the Court finds the made-whole doctrine does not apply under these facts.

The parties have also raised various arguments as to whether the language of Safeco's policy sufficiently abrogated the made-whole doctrine. *See Intervest Const. of Jax, Inc. v. General Fidelity Ins. Co.*, 133 So. 3d 494, 505-06 (Fla. 2014) (noting that the made-whole doctrine applies "unless the contract contains express terms to the contrary"). The Court finds it unnecessary to

address these arguments because the Court finds the made-whole doctrine does not apply in the first instance.

### 3. UM Settlement Agreement

Plaintiff next argues that the UM Settlement Agreement relieved her of any obligation to return the money that Safeco advanced (DE 109 at 10). Plaintiff points to the following two provisions:

> 4. SATISFACTION OF ASSIGNMENTS, LIENS AND SUBROGATED INTERESTS.
>
> [Plaintiff] agrees that any assignments, liens, bills, claims for liens and/or subrogated interests which may exist, other than those of [Safeco] will be fully satisfied from the above-described consideration prior to any other distribution of the settlement proceeds identified herein. To the extent [Safeco] is unable to fully satisfy any such assignments, liens, bills, claims for liens, and/or subrogated interests, [Plaintiff] agrees that [Safeco] shall not be responsible for any unpaid balances. Any collateral source, hospital, health care provider, insurer, attorney and/or other entity not fully satisfied shall have no right to pursue recovery against [Safeco] for any outstanding balances.
>
> 5. RESERVATION OF CLAIMS AGAINST ALL OTHER PERSONS AND ENTITIES.
>
> Notwithstanding anything to the contrary herein the defined term RELEASEES [Safeco] does not include [tortfeasor] and/or Engineered Services, Inc. Notwithstanding anything herein to the contrary, this Release shall not release claims including those arising out of the incident which the undersigned may have, for anything including causes of action for pain and suffering as well as past and future medical expenses, against any person or entity other than RELEASEES [Safeco] arising out of the incident. The undersigned reserves her right to pursue and recover all claims whether related to the incident or otherwise from any person, firm or organization who may be responsible for payment of such claims, including any first party health or automobile insurance coverage, but such reservation does not include the RELEASEES [Safeco]

(DE 104-1 at 2).

The Court disagrees with Plaintiff's interpretation of these provisions. To be sure, the release language carves out the tortfeasor and allows Plaintiff to pursue claims against the

tortfeasor. But nothing in this language suggests that Plaintiff will be relieved of her contractual obligation (via the UM policy) to return funds advanced pursuant to Fla. Stat. § 627.727(6). Moreover, this is a one-way release, with Plaintiff making promises to Safeco, not vice versa. To the extent Plaintiff seeks to impose a release of Safeco's contractual right to seek return of the money, Safeco would have had to sign the release, which it did not do.

### 4. Public Policy

Plaintiff next argues that requiring her to return the $100,000 violates public policy (DE 109 at 12). In support, Plaintiff cites *Diaz-Hernandez v. State Farm Fire & Cas. Co.*, 19 So.3d 996, 1000 (Fla. 3d DCA 2009), where the court invalidated, on public policy grounds, a UM policy provision that prohibited insureds from bringing suit against their UM insurers without first joining the at-fault uninsured motorists to the suit. The *Diaz-Hernandez* court noted that the Florida legislature enacted the UM statute for the benefit of the public, not for the benefit of insurance companies, and that its purpose was "to provide uniform and specific insurance benefits to members of the public to cover damages for bodily injury caused by the negligence of insolvent or uninsured motorists[.]" *Id.* at 998 (citations omitted). The court found the provision at issue violated public policy because it imposed an additional burden, not present in the UM statute, upon insureds seeking to sue their UM carriers, namely, the burden of joining the at-fault uninsured motorists to the suit. *Id.* at 1000.

Following this logic, Plaintiff argues that Part F of the Safeco UM policy violates public policy to the extent it requires her to return the $100,000 that Safeco advanced. The Court disagrees. As described earlier, Fla. Stat. § 627.727(6) establishes a statutory framework for UM insureds to notify UM insurers of proposed settlements and for UM insurers to make decisions regarding their subrogation rights, including a requirement that UM insurers advance an amount

15

equal to the proposed settlement as a precondition to preserving their subrogation rights. The policy provision here, requiring the insured to return any money advanced following a recovery from the tortfeasor, does not offend the statute or public policy. While the legislature surely intended the UM statute to protect the public, the Court finds this protection does not go so far as to allow an insured with policy limits of only $100,000 to recover a total of $190,000 against her UM insurer, absent bad faith.

### 5. Common Fund Doctrine

Plaintiff next argues she need not return the money due to the common fund doctrine (DE 109 at 16). "The common fund doctrine, in its simplest terms, provides that when litigation contributes substantial benefits to persons not party to the litigation and a fund is established from which the benefits will be paid, the persons responsible for gaining the benefit should be entitled to costs and attorney's fees paid from the fund." *Truman J. Costello, P.A. v. City of Cape Coral*, 693 So. 2d 48, 49 (Fla. 2d DCA 1997). Its purpose is to prevent freeloading. *US Airways, Inc. v. McCutchen*, 569 U.S. 88, 96 (2013). Plaintiff argues the doctrine applies here because Plaintiff, by virtue of suing the tortfeasor in state court, delivered a benefit to Safeco in the form of AAA's $100,000 settlement shortly before trial (DE 16 at 19).

The Court disagrees and finds the common fund doctrine does not apply under these facts because Plaintiff's lawsuit contributed no benefits to Safeco. At the end of the day, Plaintiff recovered from AAA the same $100,000 that AAA offered years earlier at the pre-suit stage (DE 90-4). Plaintiff did not "grow the pie" by obtaining a recovery so large that Safeco might have conceivably sought subrogation from the amounts recovered. If anything, Plaintiff's lawsuit ultimately prejudiced Safeco's subrogation rights since the settlement resulted in a dismissal of the suit with prejudice. *See, e.g., Sun Bank v. Jakubowski*, 583 So.2d 782, 783 (Fla. 5th DCA 1991)

16

(noting that subrogee steps into the shoes of the subrogor and is subject to all available defenses that can be asserted against the subrogor). In short, the common fund doctrine does not apply under these facts.

### 6. Wrongful Act Doctrine

Plaintiff next argues she need not return the money due to the wrongful act doctrine (DE 109 at 16). Specifically, she argues that Safeco committed a "wrongful act" by misrepresenting facts concerning the collectability of the tortfeasor, thereby causing her to sue the tortfeasor in state court. Given this wrongful act, Plaintiff argues she should not be required to return the money that Safeco advanced (DE 109 at 2).

The Court disagrees. The wrongful act doctrine is a species of damage law. It functions as an exception to the so-called "American rule," under which parties cannot normally recover attorneys' fees in the absence of a statute or contract providing for the recovery of such fees. *City of Tallahassee v. Blankenship & Lee*, 736 So.2d 29, 30 (Fla. 1st DCA 1999). The wrongful act doctrine allows recovery of attorneys' fees and other litigation expenses -- as an element of damages -- where the "wrongful act of the defendant has involved the claimant in litigation with others and has placed the claimant in such relation with others as makes it necessary to incur expenses to protect its interest…." *Reiterer v. Monteil*, 98 So. 3d 586, 588 (Fla. 1st DCA 2012). The doctrine has been applied in a variety of contexts to a variety of "wrongful acts," including torts and breaches of contract. *See, e.g., Gunster, Yoakley & Stewart. P.A. v. McAdam*, 965 So. 2d 182 (Fla. 4th DCA 2007) (professional negligence); *Aspen Investments Corp. v. Holzworth*, 587 So. 2d 1374 (Fla. 4th DCA 1991) (slander of title); *De Pantosa Saenz v. Rigau & Rigau, P.A.*, 549 So. 2d 682 (Fla. 2d DCA 1989) (breach of contract).

17

The Court finds the wrongful act doctrine does not apply here for two reasons. First, Plaintiff has identified only one "wrongful act" committed by Safeco, namely, the tort of misrepresentation via Safeco's alleged statements regarding the collectability of the tortfeasor (DE 109 at 17). But Plaintiff has not developed the summary judgment record or marshalled the evidence on this factual issue. She devotes a mere two sentences of her response brief to the alleged misrepresentations and does not identify who made the representations, when they were made, the contents of the representations, or why the contents were false (DE 109 at 17). "It is axiomatic that arguments not supported and properly developed are deemed waived." *Western Sur. Co. v. Steuerwald*, 16-61815-CV, 2017 WL 5248499, at *2 (S.D. Fla. Jan. 17, 2017), *aff'd*, 760 Fed. Appx. 810 (11th Cir. 2019).

Second, as stated, the wrongful act doctrine involves damages. Here, Plaintiff does not invoke the doctrine to seek recovery of the types of damages allowed by the rule, namely, attorneys' fees and other litigation expenses. Instead, she invokes the doctrine as a means to excuse her contractual obligation to return the money that Safeco advanced pursuant to Fla. Stat. § 627.727(6). The wrongful act doctrine does not fit these facts.

### 7. Affirmative Defenses

Plaintiff next argues that summary judgment cannot be granted because she has asserted numerous affirmative defenses, consisting of failure to mitigate damages, estoppel, set-off/recoupment, failure to join indispensable parties, public policy, unclean hands/misrepresentation, failure to perform a material condition precedent to bringing an action, and standing (DE 75, Affirmative Defenses ¶¶ 32-40). Plaintiff argues that genuine issues of material fact remain on these affirmative defenses, thereby precluding summary judgment (DE 109 at 17).

The Court disagrees. On a motion for summary judgment, the defending party cannot defeat the motion simply by alleging the existence of affirmative defenses. *Hacking v. United States*, No. 19-14449-CIV, 2021 WL 4973904, at *5 (S.D. Fla. July 28, 2021) (citing *Blue Cross & Blue Shield of Alabama v. Weitz*, 913 F.2d 1544, 1552 (11th Cir. 1990). Instead, "[t]he defending party must rely on or submit record evidence in support of the purported affirmative defenses to create a genuine issue of material fact preventing the entry of summary judgment." *Id.*

Here, Plaintiff has failed to develop the summary judgment record or marshal sufficient evidence to create genuine issues of material fact on any of her affirmative defenses. As such, summary judgment should be entered. *See Office of Thrift Supervision v. Paul*, 985 F. Supp. 1465, 1470 (S.D. Fla. 1997) ("Thus, summary judgment is appropriate where the defendant fails to come forward with evidence sufficient to dispute an element of the plaintiff's case or to support an affirmative defense.").

## V. CONCLUSION & NOTICE OF RIGHT TO OBJECT

Based on the foregoing, the undersigned **RECOMMENDS** that Safeco's Motion for Summary Judgment (DE 89) be **GRANTED** as follows:

1. As to Count I (Declaratory Relief) of Plaintiff's operative complaint (DE 72), the Court **DECLARES** that (a) Safeco has a right to recover the monies paid to Plaintiff to preserve its subrogation rights ($100,000); (b) the made-whole doctrine does not apply under these facts; and (c) Safeco has no obligation to share in the burden, via the common fund doctrine or any other doctrine, of the costs and attorneys' fees incurred by Plaintiff in obtaining the recovery from the tortfeasor and/or AAA.

2. As to Count I (Breach of Contract) of Safeco's Counterclaim (DE 73), summary judgment should be entered in favor of Safeco, and final judgment should follow in the amount of $100,000 against Plaintiff in favor of Safeco.

3. As to Count II of Safeco's Counterclaim (Unjust Enrichment) (DE 73), this count should be **DISMISSED AS MOOT**. *See Abdullatif Jameel Hosp. v. Integrity Life Sciences*, LLC, No. 8:15-CV-2160, 2016 WL 9526457, at *3 (M.D. Fla. Sept. 23,

2016) (noting that "seeking to enforce an express contract while attempting the same purpose under quantum meruit is incongruous").

4. As to Count III of Safeco's Counterclaim (Declaratory Relief) (DE 73), the Court **DECLARES** that Plaintiff must return the $100,000 fronted or advanced by Safeco.

The parties shall have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with United States District Judge Aileen M. Cannon. Failure to file objections timely shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and Recommendation and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); 11th Cir. R. 3-1.

**IF A PARTY DOES NOT INTEND TO OBJECT TO THIS REPORT AND RECOMMENDATION, THE PARTY SHALL FILE A NOTICE TO THAT EFFECT WITHIN FIVE (5) DAYS.**

**RESPECTFULLY SUBMITTED** in Chambers at West Palm Beach in the Southern District of Florida, this 9th day of February 2024.

RYON M. MCCABE
U.S. MAGISTRATE JUDGE